[No. B229202. Second Dist., Div. Three. Sept. 10, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
TWELVE THOUSAND SIX HUNDRED ONE DOLLARS AND
THIRTY-THREE CENTS ($12,601.33) IN U.S. CURRENCY, Defendant;
CYRUS CARDAN, Defendant and Appellant.

COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Cyrus Cardan, the defendant in the underlying criminal proceedings and the claimant in the forfeiture proceedings at issue, appeals from a postjudgment order awarding him $12,601.33, which represents $10,153.38 seized from Cardan's hotel room in 2003, plus the *interest actually earned* on the seized funds while on deposit in an interest-bearing account.

The essential issue presented is whether the trial court erred in failing to award Cardan interest at the legal rate of 7 percent per annum specified in the California Constitution.

 With respect to the rate of interest applicable to seized funds returned to a claimant, the controlling provisions in chapter 8 of division 10 of the Health and Safety Code[1] applicable to the "Seizure and Disposition" of property subject to forfeiture requires a seizing agency to *preserve the value* of seized property (§ 11469, subd. (i)) and, in the case of seized funds, to place the funds in an account subject to audit (§ 11469, subd. (h)).

---

[1] All further statutory references are to the Health and Safety Code, unless otherwise specified.

■ Given these statutory directives, it follows that, in order to *preserve the value* of seized funds, the seizing agency must deposit the funds into an interest-bearing account. Further, because the seizing agency is required only to preserve the value of seized funds, upon the return of such funds to a claimant, the claimant is entitled to the return of the funds plus the *interest actually earned* by the funds, rather than interest at the constitutional rate of 7 percent per annum.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Previous proceedings.*

On January 21, 2003, City of Los Angeles police officers seized 150 grams of cocaine base, 400 grams of marijuana and $10,153.38 in currency from Cardan's hotel room. While Cardan was in custody awaiting trial on charges of possession for sale of cocaine base and marijuana (§§ 11351.5, 11359), the People served notice of Cardan's right to oppose forfeiture of the funds. (See § 11488.4, subd. (c).) Cardan timely filed a claim opposing forfeiture of the funds.

A week later, the People filed a petition of forfeiture which alleged the funds were the proceeds of narcotics trafficking within the meaning of section 11470, subdivision (f).

Cardan's criminal case went to jury trial in September of 2003. The People's evidence indicated Cardan sold narcotics from his hotel room. Cardan's defense was that he sold candy, cigarettes and soda from his hotel room and the money seized by the police was the proceeds of those sales, not drug sales. Cardan was convicted as charged and sentenced to prison. *The forfeiture action was not tried in conjunction with the criminal case.* We affirmed Cardan's conviction in *People v. Cardan* (Feb. 28, 2005, B171861) [nonpub. opn.].

In May of 2006, the People served requests for admission which asked Cardan to admit he had abandoned the claim opposing forfeiture of the funds. The trial court thereafter granted the People's motion for summary judgment and entered an order of forfeiture of the funds. Cardan appealed the order of forfeiture and, in *People v. $10,153.38 in United States Currency* (2009) 179 Cal.App.4th 1520, 1530 [102 Cal.Rptr.3d 584], we held the People's failure to try the forfeiture proceeding in conjunction with the underlying criminal case, as required by section 11488.4, subdivision (i), precluded entry of an order of forfeiture. We reversed the order and remanded for further proceedings.

## 2. *The first postappeal hearing.*

Following issuance of the remittitur, the trial court set a hearing on the matter. In advance of the hearing, the People submitted a proposed order awarding Cardan $10,153.38, plus any actual accrued interest the funds had earned while on deposit.

Cardan appeared at the hearing on August 18, 2010, and filed a motion for return of the seized funds, for a jury trial to appraise the market value of rare coins included among the seized funds, and for interest at the rate of 10 percent from the date of seizure. Cardan asserted approximately $2,000 worth of the seized currency consisted of coins and at least $53.38 worth of these coins were rare and had a value in excess of face value. Cardan requested payment of the undisputed portion of the funds, $10,100, plus interest, and a jury trial on the actual value of the rare coins.

The trial court ruled the only issue before it was return of the funds, and the order submitted by the People, which the trial court already had signed, accomplished that task.

## 3. *The second postappeal hearing.*

The People thereafter gave notice of a hearing on September 23, 2010, for the purpose of returning the seized property to Cardan. A declaration filed with the notice indicated that, the day after the first hearing, the prosecutor advised Cardan the County of Los Angeles had issued a warrant in his favor in the amount of $12,601.33, which represented the seized money plus the actual interest the funds had earned while on deposit. However, Cardan failed to respond to requests to claim the warrant.

Cardan appeared at the second hearing and filed a renewed motion for return of property, reiterating his previous requests. At the hearing, the prosecutor argued Cardan was entitled only to the seized funds plus the interest actually earned by the funds in an interest-bearing account which, in this case, totaled $12,601.33. Regarding the rare coins, the prosecutor asserted the People had no knowledge any of the seized funds had value in excess of face value. Consequently, the money had been "treated as currency based on its face value."

Cardan testified that, prior to his arrest in 2003, he paid people to bring him change which he examined for buffalo head nickels. Cardan argued the presence of numerous bags of change in the hotel room should have put the People on notice the funds included rare coins although he did not mention the rare coins at the time of the search.

Cardan asserted he requested the return of the rare coins in 2006 in a letter to the prosecutor in his criminal case and in a petition for return of property, filed June 6, 2006.

The prosecutor indicated the police searched Cardan's room pursuant to a warrant and found "lots of coins and cash all in the same area, not in any particular packaging . . . that would indicate that there were rare coins in this location or a coin collection . . . because that would have been itemized. [The money was found] in close proximity to narcotics which [was] the basis for the seizure."

Cardan stated he did not keep the rare coins in specially labeled containers for fear thieves would be more inclined to take them. The trial court rejected this notion and concluded the seizing authority had not been placed on notice some of the coins might be rare. "And at this point it's . . . impossible really to ascertain the value of these" coins. Further, given the presence of narcotics and money in Cardan's hotel room, it was logical for Cardan to conclude the police would seize all money connected to Cardan's unlawful activity. "If you were concerned about the special value of any of this coinage, I think it was incumbent on you to make sure . . . that issue was addressed and by your own admission you didn't do that."

After testimony from Cardan and the prosecutor, the trial court denied Cardan's renewed motion for return of property. The minute order reflects that, at the close of the hearing, the prosecutor handed Cardan a check in the amount of $12,601.33. Cardan appeals from the order.

## CONTENTIONS

Cardan contends the trial court erred in failing to award him interest at the legal rate of 7 percent per annum specified in the California Constitution; he gave timely notice the seized funds included rare coins; the trial court erred in failing to conduct a hearing on the value of allegedly rare coins; and the People were required to give notice before depositing the seized funds into an account.

## DISCUSSION

1. *Health and Safety Code statutory scheme governing issues presented herein.*

 a. *Cardan's claims related to notice and the right to a hearing.*

 *The trial court's ruling on the notice issue rendered a hearing on the value of the assertedly rare coins unnecessary.*

Cardan argues due process requires notice and an opportunity to be heard on the value of his rare coins. Here, the trial court conducted two noticed hearings after issuance of the remittitur. At the hearing of September 23, 2010, Cardan argued his position and made factual representations regarding the circumstances surrounding the seizure. The trial court considered the facts submitted by Cardan and rejected Cardan's assertion the seized funds inappropriately had been considered currency. The trial court found the coins were not marked or separated in a manner that suggested they were rare.

Based on the trial court's determination Cardan failed to give notice prior to the deposit of the funds into an interest-bearing account that the seized funds likely included rare coins, a hearing on the *value* of the assertedly rare coins was unnecessary.

 b. *Cardan's claim of timely notice properly rejected.*

Cardan contends he gave notice of the rarity of the coins in correspondence with the prosecutor in January of 2004. However, the trial court properly concluded this notice was not timely.

Cardan was convicted of possession for sale of a controlled substance in September of 2003. Under section 11469, subdivision (h), forfeiture proceeds must *"be maintained in a separate fund or account subject to appropriate accounting controls and annual financial audits of all deposits and expenditures."* (Italics added.) Given this statutory obligation and the fact the seized funds actually earned interest, it is clear the money already had been deposited into an interest-bearing account by the time Cardan purportedly gave notice of the rare coins. Thus, even under Cardan's view of the evidence, he failed to give timely notice that deposit of the seized funds was insufficient to preserve the value of the funds.

 c. *The People were not obliged to notify Cardan before depositing the funds into an interest-bearing account.*

Cardan claims it was the government's obligation to give him notice before it disposed of his rare coins by depositing them together with other seized

funds into an interest-bearing account. Cardan relies on section 11469, subdivision (i), which states: "Seizing agencies shall ensure that seized property is protected and its value preserved." However, this statute addresses the duty to preserve, not notice.

Moreover, as noted above, section 11469, subdivision (h), directs that, "*[u]nless otherwise provided by law, forfeiture proceeds shall be maintained in a separate fund or account subject to appropriate accounting controls and annual financial audits of all deposits and expenditures.*" (§ 11469, subd. (h), italics added.) Here, the seized funds were preserved and deposited into an account subject to audit, as required by the above statutes. There was no disposal or destruction of the funds. Cardan was not entitled to notice before the seized funds were placed on deposit.

2. *The relevant provision of the Health and Safety Code requiring government to "preserve" the value of seized property entitles Cardan to the interest actually earned by the funds, not interest at the constitutional rate of 7 percent per annum.*

a. *The arguments advanced by the parties.*

Cardan claims he is entitled to interest at the 7 percent constitutional rate rather than the *interest actually earned* by the seized funds. He relies on article 15, section 1, subdivision (2) of the California Constitution which provides, inter alia: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both. [¶] *In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum.*" (Italics added; accord, *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 921 [116 Cal.Rptr.3d 244] ["legal rate of interest on an obligation before the entry of judgment is 7 percent, unless otherwise specified by statute"].) Cardan asserts the Legislature has not enacted a statute providing for anything less than interest at the legal rate in forfeiture proceedings and, absent such an enactment, he is entitled to 7 percent interest on the funds being returned to him. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 352–353 [45 Cal.Rptr.2d 279, 902 P.2d 297] ["In the absence of a legislative provision setting the rate of interest for claims against public entities, the constitutional rate of 7 percent per annum applies."].)

The People assert that, under section 11469, subdivision (i), which directs seizing agencies to "ensure that seized property is protected and its value preserved," Cardan is entitled to receive the preserved value of the seized funds, i.e., the seized funds *plus the interest actually earned by the funds*, rather than interest at the legal rate of 7 percent interest per annum.[2]

As explained, the statutory scheme supports the People's position.

 b. *A successful claimant in a forfeiture proceeding is entitled only to return of the seized funds plus the interest actually earned by the funds in an interest-bearing account.*

 The controlling statute, section 11469, which is found within the California Uniform Controlled Substances Act (§ 11000 et seq.), sets forth guidelines "to ensure the proper utilization of the laws permitting the seizure and forfeiture of property" under the statutory scheme. (§ 11469.)[3]

Section 11469 states in pertinent part at subdivision (i): "Seizing agencies shall ensure that seized property is protected *and its value preserved*." (Italics added.) The statute also specifies that "[u]nless otherwise provided by law, forfeiture proceeds shall be maintained in a separate fund or account subject to appropriate accounting controls and annual financial audits of all deposits and expenditures." (*Id.*, subd. (h).)

 Inherent in section 11469's requirement that the value of property be "preserved" is that seized currency be deposited into an interest-bearing account, rather than languishing in cash and losing value over time. Because section 11469 requires the seizing agency to *preserve* the value of seized currency, it logically follows that the claimant is entitled to the return of the funds plus the *interest actually earned* by the funds in an interest-bearing account, rather than interest at the constitutional rate of 7 percent per annum. Also, because section 11469's directive that value be "preserved" is

---

[2] A similar provision, section 11488.5, subdivision (a)(2), applies where a claimant asserts the seized property was assigned to the claimant prior to the seizure or notification of pending forfeiture. It provides: "Seized property shall be protected and its value shall be preserved pending the outcome of the forfeiture proceedings." (§ 11488.5, subd. (a)(2).)

[3] Among other things, section 11469, subdivision (d), requires seizing agencies to "have a manual detailing the statutory grounds for forfeiture and all applicable policies and procedures." Here, the Los Angeles Police Department manual, at section 540.60, sets forth the department's applicable policies and procedures. (<http://www.lapdonline.org/lapd_manual/volume_4.htm> [as of Sept. 10, 2012].) (Evid. Code, §§ 452, 459; see, e.g., *Colvin v. City of Gardena* (1992) 11 Cal.App.4th 1270, 1282 [15 Cal.Rptr.2d 234] [written police department policies are proper subject of judicial notice].)

incompatible with an award of interest at the legal rate, we conclude the Legislature has limited a successful claimant's recovery to the preserved value of the seized funds, not the seized funds plus interest thereon at the legal rate.

### c. *Other jurisdictions.*

Section 11469's implicit requirement that seized funds be held in an interest-bearing account is an express requirement in other jurisdictions.

In Oregon, for example, money seized in a criminal forfeiture proceeding "must be immediately deposited in an *insured interest-bearing forfeiture trust account* or accounts maintained by the seizing agency exclusively for this purpose." (Or. Rev. Stat. § 131.564, (6)(a), italics added.) New Mexico directs that "[s]eized currency alleged to be subject to forfeiture shall be deposited with the clerk of the district court in an *interest-bearing account.*" (N.M. Stat. § 31-27-8.A, italics added.) Similarly, in Nevada, "If an agency seizes currency, unless otherwise ordered by the court, the agency shall deposit the currency in an *interest-bearing account* maintained for the purpose of holding currency seized by the agency." (Nev. Rev. Stat. § 179.1175 2, italics added.)

Further, under federal forfeiture law, the United States is required to return seized funds plus the "interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument," or "an imputed amount of interest that such currency . . . would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid." (28 U.S.C. § 2465(b)(1)(C)(i), (ii).)

### CONCLUSION

The statutory directive that the value of seized funds be "preserved" (§ 11469, subd. (i)) is incompatible with an award of interest at the constitutional rate of 7 percent. The Legislature has limited a successful claimant's recovery to the *preserved value* of the seized funds, not the seized funds plus interest thereon at the constitutional rate.

Here, Cardan's funds were preserved and returned to him, plus approximately $2,500, which represented the actual interest earned by the funds while on deposit. He is entitled to no more.[4]

---

[4] The discrete issue before this court is whether section 11469 limits the claimant's recovery to the interest actually earned in an interest-bearing account, rather than the legal rate of

## DISPOSITION

The order is affirmed. The parties shall bear their respective costs on appeal.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2012, S205527.

---

interest at the 7 percent constitutional rate. That is a matter of statutory interpretation. Any further refinement in this area is a matter for the Legislature.